**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CHRISTINA TAYLOR; DONALD
TAYLOR,

     Plaintiffs - Appellants,

v.

LM INSURANCE CORPORATION,

    Defendant - Appellee.

No. 20-3166
(D.C. No. 6:19-CV-01030-JWB)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

Plaintiffs-Appellants Christina and Donald Taylor appeal from the district court's judgment in favor of Defendant-Appellee LM Insurance Corporation (LM). The district court decided that damage arising out of a fire caused by their daughter, Zoe, was not covered by a homeowner's insurance policy provided by LM. On cross-motions for summary judgment, the district court held in a memorandum and order that the policy's "Intentional Loss" exclusion precluded coverage. Taylor v. LM Ins. Corp., No. 19-1030, 2020 WL 4000958, at *9 (D. Kan. July 15, 2020). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**Background**

The Taylors owned a home in El Dorado, Kansas, where they lived with their 18-year-old daughter, Zoe.  Aplt. App. 220.  In October 2017, the Taylors purchased a homeowner's insurance policy from LM.  Aplt. App. 75–118; Aplt. Br. at 4 n.1. The policy covered fire damage, Aplt. App. 84, but included an "Intentional Loss" exclusion that excluded "any loss arising out of any act committed: (1) [b]y or at the direction of an 'insured'; and (2) [w]ith the intent to cause a loss," Aplt. App. 87. The policy noted that the exclusion applied whether the loss was "caused directly or indirectly," and "regardless of any other cause or event contributing concurrently or in any sequence."  Aplt. App. 86.  The Taylors were named insureds and their daughter Zoe is an "insured" under the policy.  See Aplt. App. 74, 80, 220.

The policy also included a "Mortgage Clause," that provided that "[i]f we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee," satisfied certain conditions.  Aplt. App. 89.  Wells Fargo was the mortgagee under the policy, Aplt. App. 76, but never submitted a claim under the policy.

In August 2018, Zoe was home alone and used a lighter to ignite her father's side of her parents' bedspread, intending to make him mad.  Aplt. App. 221; Aplt. Reply Br. at 1.  Though she intended to, and believed she had put out the fire, the fire spread.  Aplt. App. 221.  Zoe initially denied starting the fire, but later admitted to intending to burn the bedspread.  Aplt. App. 146–50.  Zoe had been hospitalized in

2

July because of a seizure, and at the time of the incident, was taking Prozac (an anti-depressant) and medication for epilepsy and seizures.  Aplt. App. 152–53.

The Taylors submitted a claim to LM under the policy.  Aplt. App. 119–21. LM denied coverage because "[t]he policy does not cover Intentional Loss by an Insured."  Aplt. App. 119.  In January 2019, the Taylors brought suit in Kansas state court.  Aplt. App. 10–13.  After LM removed the case, both parties moved for summary judgment.  Aplt. App. 33–34, 157–58.

The district court granted LM's and denied the Taylors' motion for summary judgment.  Taylor, 2020 WL 4000958, at *9.  The court found that the term "loss" was unambiguous in the exclusion and meant "an insured has incurred a disappearance or diminution of value in property covered under the policy."  Id. at *4.  It also found that "the standard to evaluate an intentional act exclusion," set forth in Thomas v. Benchmark Ins. Co., 179 P.3d 421, 431 (Kan. 2008), applied.  Id. at *5.  It subsequently determined the exclusion was unambiguous and precluded coverage.  Id. at *6.  The district court also rejected the Taylors' breach of contract claims.  Id. at *8–9.

On appeal, the Taylors argue that the district court erred by failing to recognize disputes of material fact as to whether Zoe intended to cause a loss and no ordinary person would find that the policy language would deny coverage in these circumstances.  They argue that the district court erred in (1) applying Thomas to this case; (2) failing to find the exclusion ambiguous; and (3) granting summary judgment to LM on the Taylors' claims for breach of the duty to investigate in good faith,

3

negligent breach of contract, and breach of the mortgage clause.  The Taylors argue that their motion for summary judgment should have been granted as to coverage, breach of contract, and negligence.  They contend that LM should have searched for evidence that supported their claim, adjusted the loss, and paid the mortgage holder.

## Discussion

This court reviews a district court's ruling on cross-motions for summary judgment de novo, viewing the evidence and its inferences in the light most favorable to the party that did not prevail.  Cyprus Amax Mins. Co. v. TCI Pac. Commc'ns, LLC, 28 F.4th 996, 1006–07 (10th Cir. 2022).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Interpretation of an insurance policy is a question of law.  Iron Horse Auto, Inc. v. Lititz Mut. Ins. Co., 156 P.3d 1221, 1225 (Kan. 2007).  This court, sitting in diversity, applies Kansas law.  Renfro v. Champion Petfoods USA, Inc, 25 F.4th 1293, 1301 (10th Cir. 2022).

A.    Thomas applies to the "Intentional Loss" exclusion.

The Taylors argue that Thomas should not be applied here because Thomas dealt with an "intentional acts" exclusion rather than an "intentional loss" exclusion. Aplt. Br. at 12, 25–27.  The court in Thomas interpreted an "intentional act" exclusion in an automobile accident policy.  179 P.3d at 424.  Under that exclusion, "bodily injury caused intentionally by you or any family member or at your or any family member's direction," was not covered.  Id. (emphases omitted).

The <u>Thomas</u> court noted that under Kansas law, "a distinction is drawn between intentional acts and the intent to cause injury." <u>Id.</u> at 425. For the exclusion to apply:

> The insured must have intended both the act and to cause some kind of injury or damage. Intent to cause the injury or damage can be actual or it can be inferred from the nature of the act when the consequences are substantially certain to result from the act.

<u>Id.</u> at 431. In so holding, the court rejected a rule that a person always intends the natural and probable consequences of those acts. <u>Id.</u> at 429. Instead, the test requires a showing of intent as to both the act and the consequences. <u>Id.</u> at 431–32. Finally, the court noted that "[i]t is not essential, however, that the harm be of the same character and magnitude as that intended." <u>Id.</u> at 431.

<u>Thomas</u> applies here. The <u>Thomas</u> test is not restricted to a specific type of exclusion but rather applies wherever there was an act that caused injury or damage. <u>See</u> <u>McElhaney v. Thomas</u>, 405 P.3d 1214, 1219 (Kan. 2017). Additionally, <u>Thomas</u> clarified where the test is inappropriate, such as where "intentional act[s] result[] in an unintended injury." <u>Magnus, Inc. v. Diamond State Ins. Co.</u>, 545 F. App'x 750, 753 (10th Cir. 2013) (unpublished)[1]; <u>Thomas</u>, 179 P.3d at 425. Here, the exclusion is not materially different from the exclusion in <u>Thomas</u> because it specified that there must be intent to do an act that causes injury or damage. Thus, <u>Thomas</u> applies.

---

[1] We cite this and other unpublished dispositions only for their persuasive value. 10th Cir. R. 32.1.

5

Alternatively, the Taylors argue that even if Thomas applies, it is not clear that, although Zoe intended to light the bedspread on fire, she believed it was "substantially certain" the fire would damage the house. Aplt. Br. at 15. However, "[i]t is not essential . . . that the harm be of the same character and magnitude as that intended." Thomas, 179 P.3d at 431. As long as Zoe intended to start the fire, and understood the fire would damage the bedspread, the exclusion applies.

Zoe's medical history does not alter the result in this case. Kansas recognizes a presumption of sanity that the Taylors must rebut. Shelter Mut. Ins. Co. v. Williams ex rel. Williams, 804 P.2d 1374, 1383 (Kan. 1991). No evidence exists in the record that Zoe was experiencing a seizure or suffering from the side effects of a previous seizure during the incident. Additionally, there is no evidence that Zoe's medication interfered with her basic understanding of the nature and consequences of fire. No reasonable juror could conclude that Zoe was unaware that lighting a bedspread would cause it to burn. Thus, there is no genuine issue of material fact concerning intent. Summary judgment was proper.

B.    The exclusion is unambiguous.

Alternatively, the Taylors argue that the exclusion is ambiguous. Aplt. Br. at 20–25. If the terms of a policy are clear, then "it must be construed in its plain, ordinary, and popular sense." Warner v. Stover, 153 P.3d 1245, 1247 (Kan. 2007). "The test in determining whether an insurance contract is ambiguous is . . . what a reasonably prudent insured would understand the language to mean." Geer v. Eby, 432 P.3d 1001, 1009 (Kan. 2019) (quoting Am. Fam. Mut. Ins. Co. v. Wilkins, 179

6

P.3d 1104, 1110 (Kan. 2008)).  Ambiguity only exists where multiple common-sense interpretations of the exclusion are possible.  Id.

Here, the Taylors argue that the phrase "intent to cause a loss" in the exclusion is ambiguous because it "is dependent on the character of the property or the use of the property."  Aplt. Br. at 21.  The Taylors point to an example of a candle causing unintentional fire damage to a home, a loss all agree would be covered by the policy. Id.  The Taylors argue that "[i]f an ordinary person needs to infer the character of the property," to understand the exclusion, it is unclear.  Id.  Additionally, the Taylors argue the exclusion is ambiguous because it does not specify that the exclusion only applies "to covered property."  Id. at 22.

These distinctions are artificial.  As discussed above, intent is defined using the Thomas test.  Given the function of a candle, an insured ordinarily does not intend to cause a loss by lighting it.  Rather, the value of the candle depends on it being burned.  An insured's use of the candle does not result in damage to the insured.  Finally, the exclusion does not require the addition of the phrase "to covered property" to be clear.  If the property was not already covered, no exclusion would be necessary.

C.    The Taylors' other contentions are unavailing.

The Taylors also argue that: (1) LM failed to make a good faith investigation into Zoe's mental illness before applying the exclusion, Aplt. Br. at 27–30; (2) LM negligently breached its contractual duty of good faith and fair dealing by failing to investigate Zoe's mental health, Aplt. Br. at 32–36; and (3) LM breached the policy

by failing to "resolve the matter pursuant to the mortgage clause," Aplt. Br. at 30–32. None of these claims have merit.

With respect to the first claim, "insurers must make a good-faith investigation of a claim." Deters v. Nemaha-Marshall Elec. Coop. Ass'n, 443 P.3d 1086, 1098 (Kan. Ct. App. 2019). However, there was no evidence that Zoe's mental illness affected her ability to comprehend the consequences of her actions, see Aplt. App. 234, and Zoe admitted to intending to burn the bedspread to upset her father, Aplt. App. 146–50. The Taylors have also failed to provide any evidence that rebuts the presumption of sanity under Kansas law. See Shelter Mut. Ins. Co., 804 P.2d at 1383. As for the Taylors' negligent breach of contract claim, "[i]t is inappropriate to denominate the available contract cause of action as one for negligent breach of contract." Marshel Invs., Inc. v. Cohen, 634 P.2d 133, 142 (Kan. Ct. App. 1981). Additionally, to the extent that the Taylors argue that LM's negligence constituted a breach of the policy, the claim fails for the same reasons that the failure to investigate in good faith claim fails: no reasonable juror could conclude that LM breached the policy. See Isaac v. Reliance Ins. Co., 440 P.2d 600, 603–04 (Kan. 1968). Finally, the mortgage clause claim fails because the policy assumes the existence of a valid claim submitted to the insurer by the mortgagee. See Aplt. App. 89. As there is no allegation or evidence that a claim was ever filed by the mortgagee, no reasonable jury could conclude that LM breached the mortgage clause of the policy.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge